```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


Douglas L. Dotson,              :

        Plaintiff,               :

    v.                           :     Case No. 2:13-cv-1065

                                 :     JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,       Magistrate Judge Kemp

        Defendant.               :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Douglas L. Dotson, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on November 10, 2010, and alleged that Plaintiff became disabled on April 10, 2004.  That onset date was later amended to April 1, 2009.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on July 25, 2012.  In a decision dated July 27, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on August 30, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 17, 2014.  Plaintiff filed his statement of specific errors on February 18, 2014, to which the Commissioner responded on April 30, 2014.  Plaintiff filed a reply brief on June 2, 2014, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 56 years old at the time of the

administrative hearing and who has a GED, testified as follows. His testimony appears at pages 59-67 of the administrative record.

At the time of the hearing, Plaintiff was receiving workers' compensation payments. He had been working at a sheltered workshop on a part-time basis, a job he obtained through the state workers' compensation agency, doing light assembly of small parts. He had a special chair and was allowed to change positions at will. Prior to that, he had worked as a heavy equipment operator and truck driver.

Plaintiff testified that pain and fatigue were his most limiting symptoms. He had pain in his lower back as well as in his neck and shoulders. His pain medications caused weakness and fatigue. He could not turn his head normally due to pain, and that activity also caused headaches. He had undergone surgery in his left shoulder, which still caused him pain, and his right shoulder was seriously damaged. He could not lift a gallon of milk higher than eye level.

Due to knee pain, Plaintiff could only stand for 25 minutes at a time. He could not do light household chores. He could walk no more than 30 yards without stopping and could only sit for 25-30 minutes. He also had hearing problems. Plaintiff stated that he had been diagnosed with COPD and used a BiPAP machine and inhalers. His shortness of breath affected his ability to walk any great distance.

### III.  The Medical Records

The medical records in this case are found beginning on page 283 of the administrative record. The pertinent records - those which relate to the claims raised by Plaintiff in the Statement of Errors - can be summarized as follows.

Plaintiff focuses on the records which are close in time to his onset date and last insured date, both of which are in 2009.

First, he points to a form completed by his treating physician, Dr. Howe, dated April 20, 2009, and submitted to the Bureau of Workers' Compensation.  Dr. Howe was reporting on limitations caused by a workplace injury which occurred on September 29, 1999.  He said that Plaintiff could continuously lift up to ten pounds; could occasionally lift from 11-20 pounds; could never bend, squat, or kneel; could occasionally twist and turn, reach below knee level, push or pull, and stand and walk; and could frequently sit.  He did not indicate total disability, and said that "according to FCE date 4/1/09 Mr. Dotson can return to work at a medium physical demand."  (Tr. 1600).

Next, Peak Performance, which was involved in Plaintiff's return to work attempt, wrote to Dr. Howe on August 8, 2009, asking questions about Plaintiff's treatment and prognosis.  Dr. Howe responded by saying that Plaintiff's medical condition was "herniated disc C6-7, and rotator cuff with a prognosis of good," that Plaintiff should continue exercises and working with the vocational agency to get back to work, that his condition was under sufficient control to permit rehabilitations services, and that he should "watch things like reaching overhead and pushing & pulling due to neck & shoulder injuries."  He reiterated the lifting restrictions from his prior report.  Dr. Howe signed this document on August 24, 2009.  (Tr. 494-95).

Dr. Howe completed another workers' compensation form on October 15, 2009.  By that date, he was expressing a more pessimistic view of Plaintiff's abilities.  He did not indicate any work activities which Plaintiff could perform either continuously or frequently.  On the other hand, the only thing Plaintiff could never do was reach above shoulder level.  Everything else, he could do occasionally, although his lifting was limited to ten pounds.  Dr. Howe also indicated that Plaintiff could do light work 2-3 hours per day, 3 days per week.

(Tr. 1601).  The form does not indicate, and Dr. Howe did not otherwise state, why this opinion differs from the two previous ones.  (Tr. 1601).  The BWC interpreted these restrictions to be consistent with part-time sedentary work.  (Tr. 1602).  Although outside the relevant time frame, Dr. Howe filled out yet another BWC form on September 28, 2010, indicating the same restrictions.  (Tr. 1603).

Plaintiff cites to only two other parts of the medical record.  Viewing these in chronological order, Plaintiff notes that an x-ray and MRI done in May, 2009, showed degenerative changes at the lumbar junction and bilateral facet arthopathy at the L3-4 level as well as a herniation at L5-S1.  (Tr. 792).  Next, a work evaluation done in November, 2009, as part of Plaintiff's return to work effort showed that Plaintiff met the light category of physical demand (with handling and lifting falling into the medium category) and that he functioned best in the knuckle to shoulder level as far as his ability to sit, bend, kneel, walk, and transfer from sitting to standing was concerned.  He had trouble with squatting, balancing, standing, stair climbing, and doing overhead and floor level tasks.  Frequent changing from standing to sitting were recommended.  Testing showed that Plaintiff could sit continuously, walk frequently, and stand occasionally.  (Tr. 497-506).

In addition to these records, the Commissioner cites to Dr. Hinzman's physical evaluation, which was done on the basis of a records review, and to a mental capacity evaluation also done by a state agency reviewer. Dr. Matyi.  Dr. Hinzman said that Plaintiff could work at the light level with some limitations, including reaching overhead with his left arm.  (Tr. 100-03).  Dr. Matyi thought that Plaintiff had moderate difficulty only in the area of maintaining concentration, persistence, and pace.  (Tr. 100).  She referred to a prior ALJ decision and to a mental

-4-

status examination conducted on February 26, 2010, and she did not do a separate evaluation of mental functional limitations. The ALJ did not refer to either of these documents, and they do not appear to be part of the administrative record filed with the Court, but there is a summary of the prior ALJ opinion found at Tr. 96-97, and it contains the notation "Low stress jobs with no inherently stressful or hazardous duties." Dr. Waddell, another reviewer, appeared to concur in the adoption of the residual functional capacity set forth in the prior opinion. (Tr. 115).

IV. The Vocational Testimony

Casey Vass was the vocational expert in this case. His testimony begins on page 67 of the administrative record.

Mr. Vass testified that Plaintiff's prior work as a truck driver was medium to heavy in exertional level and was semi-skilled work. He did not identify any other past relevant work.

Mr. Vass was then asked some questions about a hypothetical person who had Plaintiff's educational and work history. That person could work at the light exertional level and but could stand or walk for only four hours in a workday. The person could occasionally balance and stoop but could never, kneel, crouch, and crawl. The person also had to avoid concentrated exposure to fumes, odors, dust, gas, and poor ventilation, and hazards such as moving machinery and unprotected heights. Further, the person could reach overhead only occasionally with the left arm and needed to work only in low-stress jobs with no inherently stressful or hazardous duties. Mr. Vass testified that someone with those limitations could not do Plaintiff's past work.

The ALJ next asked if someone with those restrictions could do other jobs. In response, Mr. Vass identified light positions like information clerk, mailroom clerk, or cashier, all of which allowed for a sit-stand option. A restriction from climbing ramps and stairs more than occasionally, and never climbing

ladders, ropes, or scaffolds, would not affect the ability to do these jobs.

Mr. Vass was then asked how a restriction on pushing and pulling affected those jobs; he said the mailroom clerk job would be eliminated.  All of those jobs required frequent reaching.  A person limited by Dr. Howell's first report could do only sedentary work, and if the person had the limitations in his third report - particularly sitting only occasionally - there would be no jobs the person could do.  The same would be true if the person were limited to working three days per week, because that would be inconsistent with full-time employment.

### V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 37-48 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009.  Second, Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 1, 2009 through his last insured date.  Next, the ALJ found that Plaintiff suffered from severe impairments including torn rotator cuff, diabetes, chronic obstructive pulmonary disease, depression, degenerative disease at the lumbosacral junction with probable contact of disc material with lateralizing/existing nerve roots on the right suspected, obesity, and herniated disc at C6-C7.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that

he could stand or walk for only four hours in a workday and sit for six hours, could only occasionally climb ramps and stairs, bend, and stoop, and could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds.  He could occasionally reach overhead with his left arm and could not tolerate concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Further, he could not be around hazards such as moving machinery or unprotected heights.  From a psychological standpoint, Plaintiff was limited to working at low stress jobs with no inherently stressful or hazardous duties.  The ALJ found that, with these restrictions, Plaintiff could not perform his past relevant work but that he could do those jobs identified by the vocational expert including information clerk, mailroom clerk, and cashier.  Finally, the ALJ determined that those jobs existed in significant numbers in the regional economy and in the national economy.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

     VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these issues: (1) whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Howe; and (2) whether the ALJ failed to include certain limitations in his questions to the vocational expert.  The Court analyzes these claims under the following standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Treating Physician

Plaintiff argues that the ALJ violated the "treating physician" rule by failing to state the weight given to Dr. Howe's opinion. He further asserts that the ALJ incorrectly interpreted Dr. Howe's several opinions when the ALJ said that they were, overall, consistent with the ALJ's physical residual functional capacity finding. In particular, he points out that the earliest of these opinions would, if the restrictions in it were accepted, limit Plaintiff to sedentary work and therefore qualify him for benefits. According to Plaintiff, the ALJ's "failure to assign a weight to Dr. Howe's opinions, his failure to state a good reason as to why he disregarded some [of] the restrictions opined by Dr. Howe, and his failure to analyze Dr. Howe's opinion to determine whether it could be given deferential weight constitutes reversible error ...." Statement of Errors, Doc. 13, at 11.

-8-

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); see also Lashley v. Secretary of HHS, 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The problem here is that the ALJ was faced with not one opinion from Dr. Howe, the treating source, but three.  Plaintiff is correct that the first of these is essentially a restriction to sedentary work, and the third is inconsistent with any full-time employment.  However, the August, 2009 opinion, which the ALJ clearly gave more credence to than the others, does not express as many limitations - particularly the one limitation inconsistent with a limited range of light work, which is a restriction on standing for no more than one third-of the work day.  The ALJ could have concluded that such a standing

restriction did not exist or was not as severe as Dr. Howe initially expressed; in fact, he imposed a standing restriction of no more than four hours per day, which is only slightly more optimistic than Dr. Howe's April, 2009 opinion.  He also rejected any restriction about overhead lifting with the right arm based on an absence of any treatment records showing a right arm or shoulder impairment, and Plaintiff does not argue that such evidence actually exists.  From a substantial evidence viewpoint, there was enough evidence in the record, including the state agency reviewers' opinions and the later physical capacity evaluation stating that Plaintiff could walk "frequently" to justify these slight deviations from one of the treating physician multiple opinions.  Further, because the ALJ did not reject Dr. Howe's views in their entirety, but rather accepted many of the limitations he imposed, it is clear that he gave significant weight to those opinions; the fact that he did not say so explicitly does not, in the Court's view, violate the "articulation" requirement set out in Wilson and in §404.1527(c).  The decision is specific enough in that regard to be both understandable by the claimant and reviewable by the Court.

    Plaintiff does raise one issue, though, that the Commissioner does not directly address, and that is the fact that the ALJ said, at Tr. 46, that the April, 2009 assessment was "consistent with the light work level" and "not inconsistent with the limitation I have assessed."  That does not appear to be accurate, especially given the vocational testimony that the limitation on standing described in that opinion is more consistent with sedentary work than with even a limited range of light work.  In light of the ALJ's greater reliance on Dr. Howe's later opinion, however, and given the modest differences between the April, 2009 opinion and the ALJ's residual functional capacity finding - which, as noted above, are limited to the difference between standing for one-third as opposed to one-half

of the workday, and a bilateral restriction on more than occasional overhead reaching - any error in this regard does not appear to have affected the outcome of the case. It is therefore harmless and does not justify a remand.

### B. Questions to the Vocational Expert

In his second assertion of error, Plaintiff argues that the ALJ erred when he found that Plaintiff suffered from moderate deficiencies in concentration, persistence, and pace, but did not incorporate appropriate restrictions caused by those deficiencies into the hypothetical question posed to the vocational expert. He relies primarily upon the Court of Appeals' decision in Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010) for the proposition that when a claimant is found to have such deficiencies, but the hypothetical question makes no reference to speed-based or pace-based restrictions, the ALJ has failed accurately to describe the claimant's limitations to the vocational expert.

The primary problem with that argument is that this case differs significantly from Ealy in term of the evidence which was before the ALJ and the findings which were made. In Ealy, the opinion evidence accepted by the ALJ was a residual functional capacity made by two sources which addressed twenty separate mental functional abilities; the sources found the claimant moderately limited in eight of them, two of which suggested limitations in maintaining attention and concentration for extended periods and in performing at a consistent pace. Here, by contrast, the finding to which Plaintiff points came not from a residual functional capacity evaluation but from the state agency reviewer's assessment of the "B" criteria, which compare the severity of a claimant's mental limitations to the Listing of Impairments. That assessment is not, as the ALJ specifically pointed out (Tr. 43), a residual functional capacity assessment. See Sutherlin v. Comm'r of Social Security, 2011 WL 500212, *1

-11-

(E.D. Mich. Feb. 8, 2011)("the limitations noted in the B criteria at the second and third steps differ from a residual functional capacity assessment, in that the latter requires a detailed assessment of a variety of functions that fall within each of the four broad categories listed in the B criteria"). When an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination, Ealy is inapplicable. See Williams v. Comm'r of Social Security, 2014 WL 63919, *25 (E.D. Tenn. Jan. 8, 2014) ("As for Plaintiff's argument with respect to Ealy, the ALJ did not determine Plaintiff had moderate limitations in concentration, persistence and pace in fashioning his RFC, and the proposition that simple, routine, repetitive tasks does not account for such limitations does not apply").

Plaintiff does not appear to argue that the ALJ had to find greater mental limitations than he did, only that he found more limitations that those described to the vocational expert.  This is simply incorrect.  Further, as the Commissioner notes, the only mental residual functional capacity finding in the record is the one made by the prior ALJ and adopted by both state agency reviewers.  The ALJ here incorporated that exact finding into his hypothetical question.  Thus, no error was committed concerning the questions posed to the vocational expert or the ALJ's reliance on the testimony given in response.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

    The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                /s/ Terence P. Kemp
                                United States Magistrate Judge